We saw you sitting back there. We just thought you were interested in what we were doing. Very interesting case. Ah, yeah, okay. Is it all similar? No, it's not salacious. Not very salacious at all. You're one of the exotic names. That's right. May it please the Court, good morning. My name is Joe Cleveland. I represent an appellant, automated support, and an appeal from the Board of Attorneys. In my time this morning, I hope to address two key points. Number one, that the party stipulation did not have the necessary judicial infirmature to warrant Mr. Hummel having the status of a prevailing party. And number two, the magistrate's order awarding attorney's fees was void for lack of subject matter jurisdiction. First, to the Court's standard of review, whether a party prevails for purposes of a statute is a legal issue reviewed by this Court de novo. Under federal law, to receive prevailing party status, a plaintiff must obtain actual judicial relief, such as an enforceable judgment or a consent decree. Here, the magistrate judge entered neither. Instead, the parties filed a stipulation for dismissal under Rule 41A1A, and the case was dismissed without any court involvement whatsoever. But didn't he reserve the right to pursue attorney's fees? Yes, Your Honor. He did reserve the right to pursue attorney's fees, but we didn't agree that he could get those fees. Wasn't it in the stipulation? It was in the stipulation, Your Honor. Didn't concede that he had the right to recover them, or that we could contest the fact that he was a prevailing party. If federal law applied in this case, without question, Hummel would not be considered a prevailing party. In this case, however, the trial court was operating under diversity jurisdiction, and therefore was eerie bound to apply the state law of the state of Texas. All the Texas prevailing party cases cited by Hummel involve a court dismissal where there was a judicially sanctioned change in the legal relationship of the parties. Therefore, this court must make an eerie guess to determine as best it can what a Texas Supreme Court would decide. And there are two cases that give this court some clues. One is the Epps case, cited in the briefs, where the Texas Supreme Court considered whether a defendant is a prevailing party when the party non-suits a claim without prejudice. Under Texas procedure, and I know I'm speaking to no Texas lawyers here, or Texas judges, but under Texas procedure, a plaintiff can dismiss or non-suit a case at any time before introducing all of their evidence with or without agreement of the other party. A non-suit in Texas terminates the case from the moment the non-suit is filed. In Epps, the Texas Supreme Court held that the defendant is not a prevailing party unless the court determines the plaintiff took a non-suit to avoid an unfavorable judgment. The court also held in dicta that it had no doubt that a defendant who is a beneficiary of a non-suit with prejudice would be a prevailing party. However, the court did not answer the central question presented in this appeal, and that is whether if there's a joint stipulation dismissal with prejudice signed by both parties, does that make the defendant a prevailing party? Let me ask, this quote I think comes from Epps, the res judicata effect of a non-suit with prejudice works as a permanent, inalterable change in the party's legal relationship. What are we supposed to make of that? That's true, because it has a res judicata effect. Why is this not that, your case? Because, again, the law in federal court is it doesn't matter whether it's with prejudice or without prejudice. A voluntary stipulation of dismissal does not make a defendant a prevailing party. The mismatch in this case is that there's no 41A1A in state court. Therefore, we have to look at what a Texas Supreme Court would have done had a rule such as 41A1A applied in a Texas proceeding. In the Epps case, the Epps case relied on, significantly relied on federal court law in interpreting what a dismissal without prejudice would, how it would be treated. And the court found that federal cases focusing on the meaning of prevailing party were instructive and favorably cited the United States Supreme Court's decision in Buckhannon. The court also cited, the Texas Supreme Court also cited the Seventh and Federal Circuit cases holding that when a court dismisses a plaintiff's case with prejudice, the defendant is considered a prevailing party. The court also favorably cited this court's decision in Dean v. Reiser. And the Texas Supreme Court noted that this court in Reiser rejected the idea that the mere fact of dismissal, even with prejudice, is sufficient to confer prevailing party status. Another clue of how the Texas Supreme Court might decide this issue is in the case of Intercontinental Group v. KB Holmes, cited at 295 Southwest 3rd, 650 at 655, in which the Texas Supreme Court held that, quote, whether a party prevails turns on whether the party prevails on the court to award it something either monetary or equitable, close quote. These two decisions, the Epps case and the KB Holmes case, are in line with federal prevailing party principles. And therefore, it's reasonable to predict that the Texas Supreme Court would decide that because the federal dismissal procedures are uniquely procedural and governed by federal law, the party's agreed stipulation of dismissal under a federal procedure required by Rule 41A1A is not sufficient to confer prevailing party status on the defendant. And this makes sense from a practical standpoint also. If this case were filed in state court, automated support would most certainly have filed a non-suit without prejudice. In federal court, however, this type of unilateral voluntary dismissal is not permitted. Under 41A, if a defendant files an answer or a motion for summary judgment, the only way, there are only two ways that a plaintiff can get the case dismissed. One is a voluntary agreement with the other side, and the other is to file a motion with the court asking the court to dismiss it on terms that are proper. Mr. Cleveland, it seems to me voluntary dismissal under 41 and so forth with prejudice would prevent your client from suing the other side again, would it not? That's true. So doesn't that have a legal effect and change the legal relationship? That changes the legal relationship, but the federal courts have consistently held since Buchanan, the Supreme Court's decision in Buchanan, that it has to be a judicial change of the party's relationship, not a voluntary change, a private agreement between the parties that's put into the court record with no judicial involvement. So because there was no judicial involvement under federal law, there would be no question, if this was a federal statute, there would be no question that the defendant was not a prevailing party. Again, this court, since it's sitting in diversity, it's having to make an eerie guess as to what the Texas Supreme Court would do in a situation involving a federal procedure. It's a mix match on the case. And so under federal law, as I mentioned, the only way that the plaintiff can dismiss a case is either by stipulation of dismissal by agreement of the parties or a motion filed with the court to dismiss where the court makes the conditions that it considers proper. In this case, Humble would not agree to dismiss the case unless it was dismissed with prejudice. And on page 10 of Humble's brief, Humble stated that even if automated had filed a 41A2 motion to dismiss with the court on terms that were proper, Humble would have objected to the dismissal unless his claim for attorney's fees remained pending for the district court's determination. Now, Rule 41A2 provides that if a defendant pleaded a counterclaim before being served with a plaintiff's motion to dismiss, the action may be dismissed over the defendant's objections only if the counterclaim can remain pending for independent adjudication. Now, Humble had already filed a claim for attorney's fees, and if automated had filed a motion to dismiss with the court, the court would only dismiss under 41A2 if Humble's claim remained pending. And this court held in Schwartz v. Folliter that if a court dismisses with prejudice under 41A2, which didn't happen in this case, a defendant would be a prevailing party. But in this case— Didn't the district court sign an order of dismissal after the consent decree settlement was— There was no consent decree settlement. There was a stipulation to dismissal. There was no further court action whatsoever. Even by the clerk of court? No. Just a stipulation. Didn't submit an order? No. And that's how the Rule 41A1A operates. It's a stipulation to dismissal. No further court action is required. It's automatic. And that's all that occurred. So there was no judicial imprimatur of anything that the court said, this guy wins or this other side wins. There was nothing in the record to show who won the case. Humble failed to secure a judgment on the merits and is elected to settle the case with a stipulation to dismissal. He voluntarily signed that dismissal with prejudice. This voluntary dismissal was not judicially sanctioned, and Humble was not awarded any relief by the court, and therefore he should not be considered a prevailing party as a matter of law. If there are no further questions on this. Your argument is there, but tell me, within the briefing we read, what's the case that's spot on in this? I mean, as you said, it's a mixture because we're floating in Erie, but nonetheless, the dismissal is under 41A. I guess it's to say what you just said, I get it. I'm just hung up on this without judicial imprimatur being sort of dispositive of the question. That's the point that has me paused, because the rule doesn't say that. What's your best case? The Buckhammer case, the Supreme Court case, your case that you wrote, Judge Stewart, Dean v. Reiser. Uh-oh, I shouldn't have asked. Dean v. Reiser would be another case I would look at. Then the only two clues that we know about what the Supreme Court might do in a case like this is Epps. The other case that I just found is Intercontinental Group v. KB Holmes. It's cited as 295 Southwestern, 650 at 655, where now Judge Willett said in that opinion, whether a party prevails turns on whether the party prevails upon the court to award something, either monetary or equitable. So those are the only clues that we have of what the Texas Supreme Court might do in a situation applying a federal rule of civil procedure dismissal. I'm sure the good Judge Willett and some of the other cases you cite didn't have to deal with the question before us. That's correct. The language he was using wasn't taken into account. It's just a clue. An alternative way to judge. It's just a clue. All right. Of how to make an eerie guess because 41A1, there is no 41A1A procedure in state court. It's all done through a unilateral voluntary non-suit without the other side's agreement, and that was kind of the problem in this dismissal. So if there are no other questions, I'd like to turn to the second part of my argument, and that is whether or not the order awarding attorney's fees was void for lack of subject matter jurisdiction. 150 years ago in the landmark decision of Ex parte McCardell, the Supreme Court held that jurisdiction is the power to declare law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the case. The court held that no judgment can be rendered in a suit after the repeal of the act under which it was brought and prosecuted. Now, although the trial court's jurisdiction is based on diversity, the same rule applies under Texas law. Over 75 years ago, the Texas Supreme Court held in Dixon that if a right to recover depends entirely upon a statute, its repeal deprives the court of jurisdiction over the subject matter. On September 1, 2013, the Texas legislature enacted the Texas Uniform Trade Secrets Act. It is undisputed in this case that the Texas Uniform Trade Secrets Act repealed conflicting laws providing civil remedies for misappropriation of a trade secret, including misappropriation of trade secret claims under the Texas Theft Liability Act. So I did provide the court an easy reference to these statutory excerpts, and this case really hinges on Section 3 of the Enabling Act, which is set out in the handout that I provided to the court this morning. And it says that the change in law made by this act applies to a misappropriation of a trade secret made on or after the effective date of this act. The effective date was September 1, 2013. It also has a savings clause that says a misappropriation of a trade secret made before and a continuing misappropriation beginning before the effective date of this act are governed by the law and effect immediately before the effective date of the act. And so the question this court has to answer is, when did the misappropriation occur, before or after September 1, 2013? And to answer that question, the court needs to identify the elements of the misappropriation of trade secrets claim and then determine, based on the record, when Humble's misappropriation occurred. And the statute provides a definition of misappropriation. It's in the text of the statute, and it defines misappropriation by listing six alternative improper methods of acquisition, use, or disclosure of a trade secret. And in the first section, it defines misappropriation means acquisition of a trade secret by improper means. Now, while Humble may have improperly retained automated supports trade secrets, he did not improperly acquire them. So you have to go to the second level down, and incidentally that's what Humble agreed was the second alternative applied in his motion for summary judgment in the record cited 354. In the alternative second misappropriation definition, it defines misappropriation as the disclosure or use of a trade secret of another without express or implied consent who at the time of the disclosure or use knew or had reason to know that the person's knowledge of the trade secret was acquired under circumstances, giving rise to a duty to maintain its secrecy. And so those are the elements of a trade secret misappropriation, and I think the record shows that he did not misappropriate the trade secret until after September 1, 2013. I'll reserve the remainder of my time for rebuttal. Thank you, Your Honor. Thank you, Mr. Cleveland. Mr. Wood. Good morning. Your Honor, may it please the Court, my name is Eric Wood. I'm representing the appellees, Warren David Humble and Humble Design, LLC, in this case. There's only one simple question for the Court to answer really in this case, and that is did the district court abuse its discretion when it granted awarded attorney's fees to a defendant who was the recipient of a dismissal with prejudice as the prevailing party under a mandatory loser pays statute, which is what the statute at issue here is, the Texas Theft Liability Act, make no mistake, is a loser pays statute that mandates an award of fees to a prevailing defendant under both Texas law and this circuit has interpreted the statute. Neither of the two arguments that were made in the brief by appellant were even raised in the district court in response to our motion for attorney's fees. In fact, the first argument with regard to the judicial imprimatur was never raised in the district court at all. The first time that was ever raised was in appellant's brief to this court, so we believe that whole argument has been waived and should not even be considered at all. The second argument with regard to subject matter jurisdiction was raised, but it was raised post-judgment in a Rule 60B motion for relief from judgment arguing that there was no subject matter jurisdiction because the judgment itself was void. Again, we think that was basically a thinly veiled attempt to re-argue something they wish they had argued the first time. The judgment clearly wasn't void, but again, we believe that this case has waiver written all over it for a number of reasons. The third reason being, as Judge Clement pointed out, we specifically reserve the right to seek attorney's fees in the stipulation of dismissal that was filed, which was signed off on by the appellant. Had they not agreed to put that in there, or had they told my client or me, we're going to object to your ability to seek fees, I wouldn't have signed the stipulation at all. I would have made them file a response to the summary judgment, which was due the very day the stipulation was filed. The whole reason we entered the stipulation of dismissal with prejudice and included that provision in there was because my client always intended to seek recovery of those fees, and I was never put on notice, and neither was the court put on notice that the appellant was going to go back later on and say, oh, wait, court, you don't have jurisdiction to award those fees because this statute was repealed. So turning first to the first argument regarding judicial imprimatur, again, it's our position that that claim was waived because it was never raised in the district court, but we're going to assume for purposes of this argument that it wasn't waived, and I want to address some of the arguments that were made by the appellant. I agree with counsel that state law is going to control the award of fees here because this is a diversity case, so we need to look at what is the Texas Supreme Court likely to do with something like this. We know under the Texas cases that a prevailing party under the Theft and Liability Act shall be awarded fees, and every case in Texas that has looked at that has said that that means the award is mandatory to any defendant who prevails. Without any requisite for my client to show that the claim was brought in bad faith, groundless, or frivolous, we don't have to show that. If my client wins, he gets his fees, period, under the statute. The Epps case, I believe, clearly shows what the Texas Supreme Court would do in this particular instance. The Epps case, which cited cases from this court, including Dean v. Reiser, said that the res judicata effect of a non-suit with prejudice works a permanent and alterable change in the party's legal relationship to the defendant's benefit. The defendant can never again be sued by the plaintiff for claims arising out of the same subject matter. It cannot be stated any more clearly than that. With all respect, Judge Stewart's opinion also quoted it, and I'll agree with you, it couldn't be stated better. But let me also say that there again, as in the reference Mr. Cleveland made, were they even dealing with the issue that's before us? You don't need to talk about all the options necessary. Is there a case that squarely says you do or do not need a judicial order? A non-suit not reduced to a judgment is still sufficient? I believe that's what Epps says. If you look at the actual statutory language of a non-suit in Texas law, which is Texas Rule of Civil Procedure 162, I believe, it clearly says that a non-suit is effective upon filing without the need for a court order. So it's exactly like a Rule 41 federal stipulation of dismissal because they both are self-effectuating when filed and don't require a court order. So Epps has told us a non-suit with prejudice, which is not judicially sanctioned just like the Rule 41 dismissal we had here, would confer prevailing party status on the defendant. Do you recall if in Epps and Dean v. Reiser, which it was quoting, whether there was an actual court judgment? I don't know the answer to that. But in a non-suit, there wouldn't be because it's self-effectuating. It's self-effectuating, but I would not be surprised, as Judge Clement was raising, if it's not then reduced to an order that the winning party likely submits. Keep going. Okay. Thank you. This court has interpreted the Theft and Liability Act on a couple of occasions and held that attorneys who use it to the winning party are mandatory. When you look at Buchanan, Buchanan doesn't stand for the proposition, which is the Supreme Court case cited by the appellant, that they are asking this court to hold. Buchanan was completely distinguishable from this case on a number of reasons. First, Buchanan involved a statute awarding attorney's fees that was discretionary, not mandatory. Second, Buchanan involved a plaintiff seeking to recover fees from a defendant under the catalyst theory, which basically poses that a plaintiff is a prevailing party if it achieves the desired result because it brought about a voluntary change in the defendant's behavior. Neither of those have anything to do with this situation. Here, in Buchanan, the Supreme Court said there has to be a change in the legal relationship of the parties for the party to be prevailing. That's exactly what we have here. When the stipulation of dismissal with prejudice is filed, it has res judicata effect. That is a permanent, inalterable change in the relationship of the parties. It is no less effect than had my client received an award on summary judgment or an award at trial. It has the exact same effect. So there was a permanent, inalterable change between the parties when the stipulation of dismissal with prejudice was filed, and that has not changed under Buchanan. In fact, this Court, none of the cases I've cited involves specifically a stipulation of dismissal with prejudice under Rule 41, but this Court has consistently held in Dean and other cases that a dismissal with prejudice, despite the Court not having adjudicated the merits of the claim, is tantamount to a judgment on the merits. This Court has held that in the dismissal for warrant of prosecution context, in a 12b-6 context, in a stipulation of dismissal that was signed off by the Court. Now, again, in all those cases there was Court signed off, but the similarity between those cases and this case is that there was never a ruling on the merits in any of those cases. And in all of those cases, every single one of them, the Fifth Circuit held that the defendant was the prevailing party. The only difference here is whether or not the judge signed off on order or not, but the effect is the same. Again, the res judicata effect is exactly the same, whether the district court signed off on it or not. So we believe it's clear that under X and under the precedent of this Court that the Supreme Court of Texas would hold that a stipulation of dismissal with prejudice would confer prevailing party status on my client and would, in fact, give my client the ability to recover attorney's fees as the prevailing defendant under the Theft and Liability Act. Was the portion in the agreement reserving the right for attorneys, was that a negotiated language or you prepared the document and, I mean, was it discussed at all? Absolutely it was discussed. Now, this isn't in the record, but, yes, it was absolutely discussed and it was required by me that that be in there before we sign off on it. Moving to the second argument, which is that the judgment is purportedly void for lack of subject matter jurisdiction. Again, we believe that argument was waived because it wasn't raised until a post-trial argument. But, again, the pertinent thing to look at here is what was pled at the time the district court entered the judgment. At the time the judgment was entered, in fact, up to this very day, the complaint alleged a cause of action for violation of the Theft and Liability Act. That was never modified. It was never withdrawn. It was never changed at all. In fact, the complaint actually pled that those actions occurred, that the alleged misappropriation of trade secrets took place pre-September 1, 2013, which is when the statute was changed. That's what was pled. That's what was before the district court when it ruled on the motion for judgment, for attorneys' fees. So that's what the court had to look at. The claim was still a live claim, and, therefore, it ruled that when my client won, which the prevailing party, was entitled to those fees. Trumbo left your employee in July 2013. Is that right? Correct. That's allegedly when he took this confidential. Correct. That's what was pled in the complaint. Now, what the appellant is arguing is that they can go back post-judgment and introduce evidence to divest the court of jurisdiction after the fact, notwithstanding what was in the pleading. There's absolutely no case law that I'm aware of, nor do they cite any, that would allow the district court to do what the appellant is asking the court to do here, which is go back post-judgment and look at evidence as to whether or not the claim was a viable one or not. They brought the claim. If it was not a viable claim, it could have been dismissed at any time, but the fact of the matter is it was a live claim at the time that the court entered the judgment. And I'd point the court to the Speer marketing case, which was an opinion by Judge Haynes out of this court two years ago, as to whether what you look at for that was a Theft and Liability Act claim. And at the time, the defendant argued in that case that the plaintiff argued the defendant wasn't a prevailing party because the Theft and Liability Act claim was preempted by the Copyright Act. Judge Haynes said no, no, no. That was never ruled on. The fact of the matter is the live complaint at the time we ruled on the motion for a fees, the claim was still pled, and we had never ruled that it was preempted. It was exactly the same situation here. At the time the motion for a fees was signed, the claim was still a live one. The court had never ruled that that claim was preempted by law or was otherwise no longer a viable one. So that's all the court had to look at to determine whether the claim existed. But even if you want to look at the evidence, even if you want to take the quantum leap of going where appellant wants the court to go, you can look at the evidence, and the evidence that is cited actually shows that the theft of trade secrets occurred in July of 2013. And based on the Savings Clause, which opposing counsel just read, which we 100% agree with, because the alleged misappropriation took place before the enactment on September 1, 2013, that law remains in place. And what that law is is Section 134.002 of the Theft and Liability Act includes a number of things that constitute a violation, one of which was violation of Texas Penal Code Section 31.05, which is theft of trade secrets. That was a violation of the Theft and Liability Act up until September 1, 2013. That's exactly what was pled here. That's exactly what the evidence shows. The evidence and the record, which, again, the evidence that they cited, ironically, is the evidence that my client put forth in support of his motion for summary judgment. But regardless, the evidence was in the record, and the evidence was that my client left the appellant's employ on July 17, 2013. The evidence was that on the day he left, he took with him project files, quotes, and other documents, and that he used those for his own business. Now, setting aside whether those even constitute trade secrets, which, of course, we argue they didn't, the fact of the matter is that's what they pled was the violation, the theft of trade secrets, which when my client left and took that information under the definition of theft of trade secrets under the Texas 3105 of the Texas Penal Code, and that took place pre-September 1. So even if you want to look at the evidence, the evidence is clear that the alleged theft took place pre-September 1, and then, therefore, that statute remained in effect and certainly didn't divest the District Court of subject matter jurisdiction to determine the issue. And unless the Court has any other questions, I will cede the remainder of my time to the Court. Thank you for your time this morning. Thank you, sir. All right, back to you, Mr. Cleveland. Thank you, Your Honor. And if I may, I'd like to address Judge Clement's question about when the theft occurred. And, again, I think you have to look at the definition of misappropriation of trade secret in the excerpt that I provided to the Court this morning. Misappropriation means acquisition of a trade secret by improper means is the first definition. Humboldt did not acquire the trade secret by improper means. He was provided those trade secrets in the normal course of his employment, and while he may have improperly retained them after he terminated his employment, he did not improperly acquire them. He acquired them lawfully. So you have to go back to the next definition or the category of trade secrets, and that is a definition of use or disclose a trade secret. And it is undisputed that he did not use or disclose the trade secret until after the enactment of TUTSA or the Texas Uniform Trade Secrets Act in September of 2013. I want to circle back to a couple of things that my counsel and friend said at the beginning of his argument. He said the standard of view is abuse of discretion. I think it's very clear in this Court's precedent that determination of a brailing party, which is a legal determination, is decided de novo. That's, in our brief, U.S. XL Long v. GSD. And whether or not a court had subject matter jurisdiction and whether a court's judgment is void is also a de novo review by this Court, and that's decided by the Fifth Circuit decision in Newark Life v. Brown, also in our brief. The counsel suggests that we did not raise these issues in the trial court, but we did not cite Buckhammer, but we did raise the issue in the response to the motion for summary judgment at the record site 597 to 98, and, in fact, the Court addressed these arguments in its order at the record site 634. In addition, the Fifth Circuit has held that issues may be raised for the first time in a post-judgment motion for the trial court and whether a judgment is void can be raised at any time, even on appeal. So I think the waiver arguments are not well taken. The other thing that my counsel opposite said was that the Court should focus its attention on the pleadings. That's not how the Court decides jurisdiction at all in any kind of case. The Court has to look at the evidence. The parties can't plead themselves into subject matter jurisdiction or agree that the Court has subject matter jurisdiction. It has to be based on the evidence, and that's why you have to look at the evidence in the summary judgment motion and not based on the pleadings themselves. In Epps, Judge Southwick, you asked, you know, is there any case where a state court judge has ever or a state court of appeal judge has ever found that a dismissal between the parties is judicially sanctioned and, therefore, warning a prevailing party position? There is none. In Epps, it was a non-suit without prejudice. That was how that case was resolved. And in Epps, the whole issue was whether that non-suit was taken. You said without prejudice? It was taken without prejudice in Epps. In Epps, it was taken without prejudice, and the whole issue in that case was whether or not that non-suit was taken for the sole purpose of avoiding an adverse judgment. And the Court in Epps, the Texas Supreme Court in Epps, basically adopted what Judge Stewart articulated in his opinion, that you have to look at, you know, what was going on in the litigation at the time the dismissal was taken and whether the dismissal was taken in bad faith. And as you recall in Riser, it was a plaintiff taking a non-suit at the end of the case, taking a dismissal at the end of the case, and the Court found that the defendant was not a prevailing party and reversed it back down to the trial court to determine whether there was some abuse of the system and whether there was abusive conduct or bad faith conduct. So that's what that Epps case was about. There are no Texas cases where a judicial determination was made and where a party was determined to be a prevailing party or not. So it's an open question in Texas about how 41A1A would apply in a Texas proceeding, and that's why this Court won't be required to make an airy guess. Now, when this case was dismissed by agreement, there was no judicial determination of any kind of who actually won the case. The parties could have agreed to dismiss for any number of reasons, including for the reason that we offered evidence in the case, that the case was dismissed because of Mrs. McElhaney's cancer issues. It was not because they won the case. But it also could have been dismissed with no language at all, just there's an agreement between each side to dismiss the case, period, end of story. The party opposite would not agree to dismiss it on any other condition other than with prejudice. Okay, I'll back up. It could have just said an agreement to dismiss with prejudice. What I was really alluding to is the language reserving the right for the attorney's fees. I mean, it could have been a dismissal with prejudice, but that contained no language about reserving or not to fight another day, et cetera. So I know what you're arguing about the statute, but we do tend to hold people to what they agree to if it's not against public policy, blah, blah, blah. I mean, you make a good argument about it. Just that language is there, and the parties negotiated the language. It's there, and kind of if it was a red flag, oh, no, no, no, no, no, no, then just we agree to dismiss prejudice. Boom, you got to come in later and argue something else. There is a case identical with identical language in there. It's the Malibu case. It's cited in our brief. It says the defendant reserves the right to seek their attorney's fees, and in the Malibu case, it is a district court case. The district court said that that doesn't mean anything because that just says that they're reserving the right to get it, not that we're agreeing that they can have the attorney's fees or can never contest it. So if they reserve the right to get it and a magistrate judge or a judge gives it to them, anyway. My point is it's reserved the right to get it. It does not mean that you're free. No, I understand your argument is that doesn't mean they automatically get it. I mean, I understand. We can't object to it, which is what we did here. Okay, hearing an argument on both sides in good faith, we'll decide it. Thank you, Your Honor. All right, thank you. All right, we'll call up the next case, Margaret Hurst.